### A01A0941. KERR v. COHEN.
(548 SE2d 17)

ELDRIDGE, Judge.

On March 24, 1998, appellee-defendant Ronnie Cohen a/k/a Ronald Alan Cohen, Ronald Allen Cohen, Ronald Cohen, R. Allan Cohen

("Cohen"); Robert Ian Newman; Arthur W. Householder a/k/a Art Householder, Jack Allenbach, George Riger, Earl Ferrell, Orin Utterbach ("Householder"); Jerrell Breslin; David W. Rogers; Robert Petrie; Jessica Jasmin Maun a/k/a Jessica Santos ("Maun"); and Barry Lichtman were indicted upon the charge of conspiracy to conduct financial transactions knowing that the funds involved therein represented the proceeds of wire fraud in violation of 18 USC § 1343 and knowing that the transactions were carried out with the intent to further and promote such unlawful activity in violation of 18 USC § 1956. Following a hearing on January 21, 1999, the United States District Court for the Northern District of Florida accepted Cohen's plea of guilty to the charge. The case was heard in the district court on June 21 and 22, 2000.

This appeal arises out of the superior court's grant of summary judgment to Cohen, upon a verified complaint, filed on November 18, 1999, by appellant-plaintiff Ivan Kerr averring conversion, fraud, and an action to set aside contract. Cohen timely filed his answer and counterclaim, denying the allegations of the complaint and seeking his court costs, attorney fees, and damages upon Kerr's claims as false. By separate orders executed on March 6, 2000, and May 5, 2000, respectively, the superior court denied Kerr's motion for summary judgment and granted Cohen's motion for more definite statement of the complaint. On May 18, 2000, Kerr filed his verified amendment to complaint and response to the superior court's order on motion for more definite statement.

Kerr first filed the instant appeal in the Supreme Court of Georgia. The Supreme Court transferred the appeal to this Court because the underlying issues of conversion, fraud, and whether a contract existed between the parties presented questions of law, not equity. See *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745 (524 SE2d 464) (1999). In the instant appeal, Kerr contends that the superior court erred: (1) in granting Cohen summary judgment since jury questions remain as to each count of his amended complaint, and (2) in failing to enforce its order compelling discovery before ruling upon Cohen's motion for summary judgment. Finding these claims of error to be without merit, we affirm.

1. The superior court did not err in granting Cohen summary judgment as to each of his claims.

On a motion for summary judgment under OCGA § 9-11-56, the moving party may prevail by (1) presenting evidence which negates an essential element of the plaintiff's claims, or (2) showing an absence of evidence to support the case as to any essential element. *Caven v. Warehouse Home Furnishings Distrib.*, 209 Ga. App. 706 (434 SE2d 532) (1993). If

the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

*Speir v. Krieger*, 235 Ga. App. 392, 397 (2) (509 SE2d 684) (1998).

(a) *Conversion*. At common law actions for trover for conversion related only to tangible things so that an action for conversion as to money would lie only as to "withholding specific bills or coins and does not lie on account of a mere failure to pay money under a contract." *Mack v. Nationwide &c. Ins. Co.*, 238 Ga. App. 149, 150 (517 SE2d 839) (1999), citing *Faircloth v. A. L. Williams & Assoc.*, 206 Ga. App. 764, 766-767 (426 SE2d 601) (1992); *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750, 751 (1) (365 SE2d 494) (1988). Money other than specific metal or paper representing money is not tangible property.[1] *Mack v. Nationwide &c. Ins. Co.*, supra at 151. Kerr does not here seek the recovery of specific money to which he had title, either in bills or coins. Rather, he seeks to recover a sum of money in the general sense. The record shows that he offered no evidence to the contrary in support of his conversion claim. Because a cause of action for conversion does not lie in the instant circumstances, the superior court did not err in granting Cohen summary judgment on this count. See *Cooke v. Bryant*, 103 Ga. 727, 731 (30 SE 435) (1898) (" 'Trover lies for the conversion of money, when there is an obligation on the part of the defendant to return specific coin or notes entrusted to [one's] care.' [Cit.]").

(b) *Fraud*. To establish the tort of fraud, Kerr was required to show: (1) a false representation; (2) scienter; (3) intent to induce plaintiff to act or refrain from acting thereon; (4) justifiable reliance by plaintiff; and (5) proximate damage to the plaintiff. *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (3) (525 SE2d 377) (1999); *Vester v. Mug A Bug Pest Control*, 231 Ga. App. 644, 646 (1) (a) (500 SE2d 406) (1998), rev'd on other grounds, *Mug A Bug Pest Control v. Vester*, 270 Ga. 470 (509 SE2d 925) (1999); *Lister v. Scriver*, 216 Ga. App. 741, 745 (456 SE2d 83) (1995); *Parsells v. Orkin Exterminating Co.*, 172 Ga. App. 74, 75 (322 SE2d 91) (1984). In response to Cohen's motion for summary judgment, Kerr filed the transcript of his testimony in federal court against Cohen's co-conspirators, having earlier tendered the transcript of Cohen's guilty plea hearing in support of his motion for summary judgment and his amended verified complaint.

Pertinently, the evidence shows that in order to initiate a transaction to obtain venture capital, the co-conspirators required their

---

[1] Tangible things and monetary value are well distinguished in *Vaughn v. Wright*, 139 Ga. 736 (78 SE 123) (1913).

clients to transmit fees of $50,000 to $2 million to an escrow agent at an offshore bank for the purpose of syndicating investors. Such fees were to be held in escrow until clients provided a bank payment guarantee or irrevocable letter of credit guaranteeing their fees. Typically, receipt of this guarantee was required within five to seven days, and failure to provide it resulted in the forfeiture of such fees as had been paid. In reality, the co-conspirators lacked access to the venture capital they held themselves out as having, and they designed their operation with a view to causing clients to forfeit the fees they had paid and divided these among themselves on an agreed-upon schedule.

In May 1995, Kerr received a letter from co-conspirator Householder offering him venture capital through an organization Householder referred to as the Centurion Group. Kerr responded the following month, indicating that he needed $1.5 to $2 million to expand his factoring and freight brokerage businesses, businesses he described as very successful, growing rapidly, and worth $3 to $6 million. Householder responded, guaranteeing Kerr funding in the amount of $5 million upon the payment of a retainer fee of $10,000 to the group's escrow agent and an additional five percent charge on the funding he was to provide. Householder also required that Kerr provide his escrow agent a copy of a cashier's check, bank payment guarantee, or irrevocable letter of credit in the amount of his fee.

Kerr paid the $10,000 fee on a second visit to Householder's office. At that time, Householder told Kerr that he had funded a number of projects similar to Kerr's over the years; however, he had earlier declined to provide Kerr with references, citing a confidentiality agreement with his clients while assuring him that he would nonetheless be comfortable with their names.

In early August 1995, Householder learned that Kerr was past due on a $150,000 line and operating account at his bank. Later that month, Kerr went to the bank seeking a letter of credit covering Householder's fees on the transaction. There Kerr saw a loan officer who refused him saying, "It looks like a drug deal." On August 24, 1995, Kerr, through his vice president, wrote Householder seeking a refund of the retainer fee he had paid and withdrew from the transaction. He also stated, however, that he would reapply at a later time. Thereafter, rather than exploring getting a Small Business Administration loan or pursuing other options, Kerr consulted an attorney to assist him in resolving the problem of his past due account at the bank. Kerr's attorney likewise advised him not to further pursue venture capital financing.

On September 26, 1995, Kerr received a memorandum from another investment group. The memorandum, authored by co-conspirator Maun, offered to provide Kerr the venture capital Kerr

needed through co-conspirator Newman, a man described as more experienced in syndicating venture capital than Householder. Although his attorney and his banker had indicated it was not a good idea, Kerr entered into negotiations with Newman for funding, ultimately wiring $100,000 to Cohen as Newman's escrow agent and $13,500 to a Dennis McGregor who was to provide a bank letter of credit backing the $100,000 sent to Cohen. When the letter of credit was not forthcoming, Kerr paid an insurance company $50,000 and an additional $45,000 to Newman seeking the credit he needed to keep the transaction alive.

Kerr testified that although he was familiar with McGregor's name, he never met him in person. In this regard, Kerr recalled that he was told that McGregor would provide him the bank credit he needed to cover Householder's fees for getting him venture capital. On cross-examination, Kerr testified that he nevertheless wired $100,000 to Cohen upon Newman's representation that McGregor would vouch for him.

Kerr's amended verified complaint showed that in the spring of 1996, Newman's group advised him that his funds had been forfeited for his failure to obtain the credit necessary to secure the $100,000 he wired Cohen. Newman demanded the payment of an additional $75,000 in order to proceed with the transaction, a portion of which Kerr paid, but these further efforts to obtain venture capital also failed. Kerr put his losses at "between 250 and $300,000[,]" forcing one of his businesses to go into bankruptcy.

We conclude that the foregoing evidence was sufficient to raise jury questions as to each of the elements of fraud, except that requiring Kerr to show that he justifiably acted, relying upon Cohen's representations or representations made on Cohen's behalf. The evidence showed that plaintiff had ignored warnings by both his banker and lawyer about the nature of the transaction, and there is no evidence that he exercised reasonable care to investigate before paying over such sums. Kerr having failed to come forward with evidence demonstrating a triable issue on this element of fraud, the grant of summary judgment to Cohen was proper on Kerr's fraud claim. *Speir v. Krieger*, supra at 397.

(c) *Contract.* Cohen supported his motion for summary judgment by his own affidavit wherein he stated, as he had by his counterclaim, "I have never entered into any contract with Mr. Kerr, either oral or written."

> A contract is an agreement between two or more parties for the doing or not doing of some specified thing, [OCGA § 13-3-1], and to constitute a valid contract there must be a subject matter upon which it can operate. [OCGA § 13-3-1.] In

order that it may allege an agreement, a [complaint] must set forth a contract of such certainty and completeness that either party may have a right of action upon it. [Cit.]

*Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438, 439-440 (1) (130 SE2d 530) (1963). Kerr supports his contract claim by his verified complaint alone. However, inasmuch as Kerr provides no factual basis in support thereof, his complaint is conclusory in this regard and insufficient to avoid summary judgment. See *Harrison v. Harrison,* 159 Ga. App. 578 (284 SE2d 83) (1981) ("Verified pleadings have been held to be equivalent to a supporting or opposing affidavit for purposes of raising an issue of fact on summary judgment. [Cit.]"); see also *Vanacore v. Citizens Bank*, 228 Ga. App. 87, 88 (491 SE2d 181) (1997) ("Where no factual basis is provided for an averment appearing in an affidavit, it may be deemed conclusory and will not be sufficient to avoid summary judgment. [Cit.]"). Having failed to show this fundamental requisite to an enforceable contract by his complaint or in response to Cohen's motion for summary judgment, the superior court did not err in granting Cohen summary judgment on Kerr's contract claim. OCGA § 13-3-1; *Speir v. Krieger,* supra at 397. At best, Kerr established only his efforts at contract formation but never established a contract with definite essential terms, whether express or implied, i.e., the nature of the capital contribution, form of contribution, and when contribution would be made and by whom as well as the role of the defendant.

2. Even if the superior court erred in rendering its order on Cohen's summary judgment motion without enforcing its order compelling discovery (and we find no error), such error would have been harmless. The materials sought — a copy of Cohen's petition for voluntary disbarment, a copy of all responses from the Georgia Bar, including Cohen's disbarment, a listing of Cohen's victims, his co-conspirators, his aliases, his Social Security number, income and real estate information, and a listing of persons to whom Cohen transferred in excess of $100 since May 1997 — were immaterial under the circumstances of this case. *Kramer v. Kroger Co.*, 243 Ga. App. 883, 889 (4) (534 SE2d 446) (2000).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED APRIL 10, 2001 —
RECONSIDERATION DENIED APRIL 26, 2001

*Arthur J. Shelfer, Jr.,* for appellant.
*T. Mark Thedieck,* for appellee.