A01A0838. EDMONDSON et al. v. GILMORE.
(554 SE2d 742)

RUFFIN, Judge.

Scott and Traci Edmondson filed a petition in Brooks County Superior Court to adopt T. M. G. The trial court dismissed the Edmondsons' action, and the Edmondsons filed this appeal. For reasons that follow, we affirm.

The facts underlying this appeal were thoroughly detailed both by this Court and the Supreme Court in *In re Stroh*.[1] The relevant facts follow. In January 1996, Christina Gilmore gave birth to T. M. G. Approximately two months later, the Georgia Department of Human Resources (DHR) obtained custody of the child and placed him in foster care with the Edmondsons.

In July 1996, Alabama residents Allen and Brenda Stroh learned of T. M. G.'s existence and filed an adoption petition in Echols County, Georgia. The Strohs, who had adopted T. M. G.'s half-sister in 1993, wanted to raise the siblings together. In June 1997, DHR moved to intervene in the adoption, purportedly to protect the inter-

---

[1] 240 Ga. App. 835 (523 SE2d 887) (1999), writ of certiorari vacated, 272 Ga. 894, 896-898 (534 SE2d 790) (2000) (Hunstein, J., dissenting).

est of T. M. G. The trial court permitted DHR to intervene. The Edmondsons, who decided that they wanted to adopt T. M. G., requested permission to intervene in the Strohs' petition or to file a separate petition, and the trial court agreed.

The Edmondsons chose not to intervene, and instead, on May 12, 1998, they filed a separate petition in Echols County to adopt T. M. G. The trial court heard both the Edmondson and Stroh petitions on July 16, 1998. During the hearing, the Edmondsons' attorney cross-examined the Strohs, and several witnesses testified on behalf of the Edmondsons.

Following the hearing, the trial court concluded that both adoption petitions were flawed, and it dismissed the petitions.[2] The Strohs filed a motion for reconsideration and requested that the trial court address their petition for temporary custody of T. M. G., which the trial court subsequently denied. Upon learning that the Strohs had filed a motion for reconsideration, the Edmondsons moved to intervene. But the trial court ruled on the Strohs' motion prior to receiving the Edmondsons' request and thus dismissed the Edmondsons' motion.

The Strohs appealed the trial court's order to this Court. Although the Edmondsons were not technically parties to the appeal, they responded and submitted amicus briefs. In a lengthy opinion, another panel of this Court concluded that the trial court properly dismissed the Strohs' adoption petition. Nevertheless, this Court found that the trial court abused its discretion in denying the Strohs' request for temporary custody. This Court concluded that T. M. G.'s birth mother had executed a valid surrender of parental rights in favor of the Strohs.[3] As the Strohs were not able to proceed with adoption in this State, this Court found that "the trial court should have transferred custody to them in order to assist in their pursuit of an Alabama adoption."[4]

The Edmondsons petitioned the Supreme Court for certiorari, which that Court initially granted.[5] Over sharp dissent, however, that Court vacated its grant of certiorari on the basis that the Edmondsons were never actually parties to the Stroh adoption petition.[6] Accordingly, the opinion of this Court remains the final judg-

---

[2] 240 Ga. App. at 839 (Specifically, the trial court concluded that the Strohs were unable to proceed with the adoption because they had not lived in Georgia for six months prior to the adoption as required by OCGA § 19-8-3 (a) (3). With regard to the Edmondsons, the trial court found that their petition failed to comply with statutory requirements under OCGA § 19-8-4, § 19-8-5, or § 19-8-13.).

[3] See id. at 841 (1) (b) (ii).

[4] See id. at 842 (1) (c).

[5] See 272 Ga. at 894-895.

[6] Id.

ment with regard to the Stroh petition.

Meanwhile, in October 1998 — before the Strohs filed their appeal to this Court — the Edmondsons filed a new petition to adopt T. M. G. in Brooks County, Georgia. On October 19, 2000, the Strohs moved to dismiss that petition, asserting that this Court's opinion with regard to the Stroh adoption petition "precludes any further proceedings with regard to the Edmondsons' petition." The Brooks County court agreed and dismissed the Edmondsons' petition with prejudice, concluding that the Edmondsons, who are in privity with DHR, are bound by this Court's decision in *In re Stroh*. Asserting multiple enumerations of error, the Edmondsons challenge this ruling. As we find that collateral estoppel bars the Edmondsons' current adoption petition in Georgia, we affirm.

1. "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment."[7] In *In re Stroh*, this Court decided that the Strohs had obtained a valid surrender of Gilmore's parental rights and were entitled to pursue adoption of T. M. G. in Alabama. If the Edmondsons are permitted to petition a Georgia court for the adoption of T. M. G., that suit would necessarily require relitigation of the Strohs' right to adopt the child. Here, however, collateral estoppel bars the Edmondsons' petition.

"Res judicata and collateral estoppel are related and similar, but separate, doctrines."[8] As with res judicata, "collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim."[9]

According to the Edmondsons, collateral estoppel does not apply because there is no identity of parties. We disagree.

As the Supreme Court has noted, "[t]he term 'party' to an action includes all who are directly interested in the subject matter, and who have a right to make defense, control the pleadings, examine and cross-examine witnesses, and appeal from the judgment."[10] We ascertain whether a person is a party "exclusively by inspection of the record."[11] In so doing, we look for the existence of an adversarial relationship.[12]

---

[7] *Atlanta Cas. Ins. Co. v. Gardenhire*, 248 Ga. App. 42, 43 (1) (545 SE2d 182) (2001).

[8] *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 40 (514 SE2d 843) (1999).

[9] *Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*, 273 Ga. 175, 178 (1) (538 SE2d 175) (2000).

[10] *State Bar of Ga. v. Beazley*, 256 Ga. 561, 563 (1) (b) (350 SE2d 422) (1986).

[11] Id.

[12] See *Fedeli v. UAP/Ga. Ag. Chem.*, 237 Ga. App. 337, 340 (2) (514 SE2d 684) (1999)

Here, the record demonstrates that the Edmondsons had a direct interest in the subject matter — the adoption of T. M. G. For this reason, the trial court permitted them to file their own adoption petition, which was addressed during the same hearing as the Strohs' petition. At the hearing, the Edmondsons' attorney cross-examined the Strohs and presented evidence to establish that the Edmondsons should serve as the adoptive parents. When the trial court dismissed both adoption petitions and the Strohs appealed to this Court, the Edmondsons responded.

Where a party is represented by counsel, appears at a hearing, and presents testimony from multiple witnesses in opposition to and/ or in support of adoption, "[t]here is no question that a 'full hearing' on the petition took place."[13] As the Edmondsons acted and were treated as parties, they should be considered as parties for collateral estoppel purposes.[14]

We note that the Edmondsons were not permitted to appeal this Court's decision to the Supreme Court because they were not *technically* parties to the Strohs' petition. It could therefore be said that the Edmondsons did not have a full and fair opportunity to litigate their claim. On balance, however, the Edmondsons had such opportunity.[15] Here, the Edmondsons could have intervened in the earlier suit, thus protecting their right to appeal.[16] Indeed, the Edmondsons attempted this very action, albeit belatedly. Thus, it was not that the Edmondsons were barred from appealing, merely that they failed to take the necessary steps to be included as a party on appeal, and such procedural default still carries the sanction of collateral estoppel.[17] It follows that the trial court properly dismissed the Edmondsons' petition to adopt T. M. G.

We further note that, in the prior ruling in this case, we reasoned that the Strohs should have temporary custody of T. M. G. to

---

(addressing whether sufficient adversarial relationship existed to invoke the doctrine of res judicata).

[13] See *Matherly v. Kinney*, 227 Ga. App. 302, 304 (3) (489 SE2d 89) (1997).

[14] See *Beazley*, supra at 564 (State Bar considered party for res judicata purposes).

[15] See *Fowler v. Vineyard*, 261 Ga. 454, 458-459 (4) (405 SE2d 678) (1991) (balancing factors in determining whether party had full and fair opportunity to litigate).

[16] OCGA § 9-11-24 (a) (2) provides that, upon a timely application, a person may intervene as a matter of right if he "claims an interest relating to the . . . subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[17] See *Spooner v. Deere Credit*, 244 Ga. App. 681, 682 (536 SE2d 581) (2000) (failure to timely file answer in one suit precludes litigation of issues in subsequent suit). See also *Intl. Indem. Co. v. Robinson*, 231 Ga. App. 236, 237 (1) (498 SE2d 795) (1998) (discussing procedural default and res judicata).

assist with their pursuit of an Alabama adoption.[18] If the Edmondsons are permitted to maintain a separate adoption petition in Georgia at the same time the Strohs have temporary custody and are attempting to adopt T. M. G. in Alabama, we would have two courts from two states addressing the adoption of the same child. And, if those courts enter conflicting orders, the Edmondsons and Strohs will have to litigate which order should take precedence. The litigation could drag on for years, leaving T. M. G.'s fate undecided. Such a situation contravenes the Uniform Child Custody Jurisdiction and Enforcement Act,[19] which includes detailed jurisdictional requirements to avoid competing jurisdictions and to promote comity in child custody disputes.[20]

We are aware of the irony of resolving so emotional a dispute on such a technical basis. And we are equally aware of the pain this decision will bring to the Edmondson family. It is evident that the trial court that heard both adoption petitions found both the Edmondsons and Strohs to be fine people and capable parents. Regrettably, only one family can fill this role. As an appellate court, we must focus on the correction of legal error.[21] In so doing, we lay claim not to the wisdom of Solomon, but to the rule of law. Here, the rule of law mandates that we give finality to our judgments. Accordingly, we affirm.

2. In view of our holding in Division 1, we need not address the Edmondsons' remaining enumerations of error.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 13, 2001 —
RECONSIDERATION DENIED OCTOBER 9, 2001 — ▮

*Griner & Mirate, Galen A. Mirate, Melinda M. Katz*, for appellants.

*Saliba & Moore, George M. Saliba II, Gregory A. Voyles, Charles R. Reddick*, for appellee.

---

[18] We make no ruling on whether the Edmondsons can participate in any proceedings in Alabama.

[19] See OCGA § 19-9-40 et seq.

[20] See OCGA §§ 19-9-61; 19-9-62; 19-9-63; 19-9-64.

[21] See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).