A04A0202. AUSTIN et al. v. COHEN.
(602 SE2d 146)

MILLER, Judge.

William R. Austin, Edward J. Herrman, and Ivan Kerr brought a civil action against Ronnie Cohen under the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, OCGA § 16-14-1 et seq., claiming to be "persons injured" and "aggrieved persons" as defined under the RICO Act. They asserted that their RICO action was "supplemental to any other civil or criminal remedy." In their complaint, Austin, Herrman, and Kerr alleged that Cohen had participated in at least 38 prohibited activities involving them and others and that through "an advanced fee loan money-laundering enterprise," had damaged them by acquiring their "money, services, and property." Following a jury trial in which Austin and his co-plaintiffs prevailed, the trial court granted a judgment notwithstanding the verdict (j.n.o.v.) in favor of Cohen, reasoning that the plaintiffs' claims were barred by res judicata and collateral estoppel. Austin, Herrman, and Kerr appeal from this ruling. For the reasons that follow, we are constrained to affirm.

It is undisputed that as a result of a federal investigation into an elaborate scheme to defraud, a federal grand jury indicted Cohen for conspiracy to launder proceeds, resulting in Cohen's arrest in 1999. Based upon a "cooperation agreement which required him to give testimony," Cohen was permitted to enter a guilty plea to conspiracy to commit wire fraud. See *In the Matter of Cohen*, 271 Ga. 584 (522 SE2d 456) (1999). In June 2000, Cohen testified as a government witness in a federal trial in Gainesville, Florida.

In 1999 and 2000, Austin, Herrman, and Kerr individually filed separate lawsuits against Cohen, and thereafter lost on summary judgment. Herrman sued Cohen for fraud, conversion, and to set aside contract. In *Herrman v. Cohen*, 252 Ga. App. 84 (555 SE2d 17) (2001), this Court affirmed summary judgment because of the lack of evidentiary support for Herrman's claims. Id. at 85 (2). Austin also filed an action to set aside contract and sued Cohen for fraud and

conversion stemming from a fraudulent investment scheme. In *Austin v. Cohen*, 251 Ga. App. 548 (554 SE2d 312) (2001), we affirmed summary judgment to Cohen because Austin failed to present specific argument, case law, and record citations to support his contention that material issues of fact remained for resolution. Id. Kerr likewise sued Cohen for fraud, conversion, and to set aside contract. In *Kerr v. Cohen*, 249 Ga. App. 392 (548 SE2d 17) (2001), this Court affirmed summary judgment, finding, in particular, that Kerr failed to present evidence to show justifiable reliance on Cohen's representations. Id. at 396 (1) (b).

At the time of the financial transactions involving Austin, Herrman, and Kerr, Cohen was an attorney licensed in Georgia to whom they entrusted substantial funds when they wired the funds at his instruction. As such, Cohen occupied a confidential and fiduciary relationship that he apparently breached.

The record shows that on summary judgment in each case, Cohen submitted his own testimony, an affidavit virtually identical in substance and content. In these affidavits, Cohen repeatedly denied entering into any business dealings, having any discussions, including by telephone, "prior to the alleged business transaction." On summary judgment Cohen may have submitted perjured testimony. In the Kerr case for example, Cohen testified that he "never engaged in any negotiations with Mr. Kerr," and "never spoke with Mr. Kerr prior to, or during the time he alleges he was harmed." However, the record clearly reveals that Cohen had business dealings with Herrman and Kerr, particularly in providing explicit instructions to them as to how and where to wire the funds, and that Cohen dealt indirectly with Austin.

The RICO case here proceeded to a jury.[1] A Federal Bureau of Investigation (FBI) special agent testified in considerable detail about Cohen's participation in a fraudulent investment and money laundering scheme in which he represented himself as the escrow agent acting for a bank in Antigua. The agent testified without contradiction that "Mr. Cohen admitted to being involved in wire fraud, mail fraud, and the subsequent laundering —." He also testified that Cohen had "entered a plea of guilty for participation in a money laundering conspiracy." The agent described Cohen's role as escrow attorney "for Venture Capital Syndication deals or transactions that Phoenix Investment Group engaged in." The FBI agent confirmed Cohen's admissions:

---

[1] Prior to trial, the court struck Cohen's defenses of res judicata and estoppel by judgment. Upon Cohen's motion for reconsideration, the trial court modified its order "to allow further reconsideration of the defenses of res judicata and estoppel by judgment or collateral estoppel, after the plaintiffs' evidence has been presented."

that he had been involved with a group of other individuals who were involved in committing wire fraud and mail fraud, and that during his tenure as Escrow Attorney for the group, and later for the bank at Antigua, Caribbean American Bank, that of the 38 clients that were contacted through the office he maintained in Coolidge, Georgia, including the Plaintiffs here, none were provided with venture capital per their requests and that all 38 lost the fees which they had provided to the group.

The agent confirmed that Cohen acknowledged committing crimes through his office in Coolidge, and admitted that Austin, Herrman, and Kerr were among the 38 victims of the wire fraud and mail fraud.[2] The FBI agent, who had attended the federal criminal trial, provided testimony about parts of Cohen's testimony from that trial in which Cohen testified as a government witness.

In addition to the FBI agent, Austin, Herrman, and Kerr also testified at trial, describing their investments and transactions with Cohen. Herrman and Kerr testified that Cohen had given them exact instructions on wiring their money to Chase Manhattan Bank in New York, the bank from which the funds were wired to a bank in the Caribbean. Herrman testified that before wiring the funds, he had his lawyers investigate the parties and Cohen's law firm[3] and had his certified public accountants examine the documents. Herrman also produced a letter from Cohen addressed to him in which Cohen represented himself as a member of the Georgia bar, acting on behalf of Caribbean American Bank. Herrman testified that, relying upon Cohen's representations, he wired $880,000 to Chase Manhattan Bank. Herrman avowed that Cohen "is the one that gave us the instructions where to send the money. . . ." Kerr testified that before wiring the money to Cohen, he had contacted the State Bar of Georgia to determine whether Cohen was an attorney in good standing. Kerr testified that when Cohen called him, Cohen "gave me several assurances that they'd closed a number of these transactions where the people actually received their money, but because of confidentiality, he wasn't at liberty to give me that information." Kerr testified that when he wired the money, he did so at Cohen's instruction. Kerr also testified that at Cohen's request, he had faxed a copy of a check to Cohen. Austin testified that while he had not met Cohen, "I relied

---

[2] In a document pertaining to the RICO action here that Cohen filed in superior court on June 28, 2002, Cohen contradicted his testimony at the federal trial and his admission by claiming that he "*never* had *any* dealings with *any* of the Plaintiffs prior to them losing their money." (Emphasis supplied.)

[3] Cohen's former law firm had no role in the illegal scheme.

on Mr. Cohen as being an attorney with an escrow account that supposedly, used to be safe."

After expressly finding the existence of four predicate acts as contemplated by RICO, the jury entered three substantial verdicts against Cohen. The verdicts, after being trebled under RICO, resulted in a judgment awarding $3,300,000 to Austin, $675,000 to Herrman, and $2,165,625 to Kerr. Thereafter, Cohen filed a motion for j.n.o.v. or alternatively, motion for new trial. Cohen asserted that the jury should never have heard the RICO action because the doctrines of res judicata and collateral estoppel completely barred the RICO claim. Cohen contended that the three prior suits were "based upon the same facts and making the same claim against Ronnie Cohen that was made in the RICO suit." Cohen argued that "[i]t is established beyond question that the action now brought by [the] three plaintiffs under a RICO theory is based upon the same facts, the same loss, and the same claim against the same defendant that was the basis of each of the three actions previously filed by the same three plaintiffs."

After review, the trial court agreed and set aside the judgment. The trial court concluded that the RICO action was, in fact, based on "the same claims that are . . . the basis of previous suits filed by each plaintiff [in their respective actions in the Superior Court of Thomas County]." The trial court found:

> The factual basis for the present RICO claim is substantially the same as was presented in each of the above cases and is supported by the same evidence. The court therefore finds that the claim of each of the plaintiffs is barred by res judicata. The doctrine of collateral estoppel applies to prevent the relitigation of the claims previously ruled upon.

The trial court also decided that OCGA § 16-14-9 does not create additional litigation rights and does not create an exception to the doctrine of res judicata. In setting aside the jury's verdict, the trial court determined that Cohen was entitled to judgment as a matter of law because the "plaintiffs' claims are barred by res judicata and collateral estoppel."

1. Austin, Herrman, and Kerr contend that the trial court erred in granting the j.n.o.v. on the basis that their RICO claims were barred by the doctrines of res judicata and collateral estoppel. They claim that the prior suits were based on claims for fraud and conversion and that "[t]he issue of whether Cohen was engaged in a pattern of racketeering activity was not actually and necessarily litigated."

They assert that they did not know that they were "among the thirty-eight victims of the criminal conspiracy of which Cohen was a part."

"A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion." (Citations omitted.) *Ledee v. Devoe*, 250 Ga. App. 15 (549 SE2d 167) (2001). Here, there is an evidentiary basis for the jury's verdict. See id. at 17 (1). The trial court, however, granted the motion for j.n.o.v based on the doctrines of res judicata and collateral estoppel, not due to an absence of evidence.

We find those doctrines apply here. "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." (Punctuation and footnote omitted.) *Edmondson v. Gilmore*, 251 Ga. App. 776, 778 (1) (554 SE2d 742) (2001), rev'd on other grounds, *In re T. M. G.*, 275 Ga. 543 (570 SE2d 327) (2002). Collateral estoppel or issue preclusion prevents the relitigation of an issue that is identical to one decided in a prior proceeding involving the same parties. See *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446 (1) (469 SE2d 509) (1996). When the doctrine of collateral estoppel applies, an issue previously litigated and adjudicated on the merits cannot be relitigated even as part of a different cause of action. *Jordan v. Bd. of Public Safety*, 253 Ga. App. 339, 342 (1) (559 SE2d 94) (2002). This doctrine prevents a litigant from splitting his claims against the same party into a series of lawsuits. See id. at 341 (1).

The doctrine of res judicata seeks to bring finality to litigation. By law,

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

OCGA § 9-12-40; *Fowler v. Vineyard*, 261 Ga. 454, 455 (1) (405 SE2d 678) (1991). Res judicata bars a subsequent action when these requirements are met: "[t]he first action must have involved an adjudication by a court of competent jurisdiction; the two actions must have an identity of parties and subject matter; and the party against whom the doctrine of res judicata is raised must have had a

full and fair opportunity to litigate the issues in the first action." (Citations omitted.) *Grant v. Franklin*, 244 Ga. App. 370, 371 (534 SE2d 584) (2000).

Here, the prior cases and the RICO case involve the same parties and the same subject matter such that the RICO claim should have been raised in the original lawsuits or added by amendment. Although Austin, Herrman, and Kerr argue that they did not know about the federal criminal proceedings and were unaware of the existence of the criminal conspiracy, they have not cited and we have not found evidence of record to support that claim. On October 18, 1999, the Supreme Court accepted Cohen's voluntary surrender of his license to practice law, noting that Cohen had pled guilty to the felony offense of conspiracy to commit wire fraud in violation of federal law. *In the Matter of Cohen*, supra, 271 Ga. at 584. It does not appear that subsequent to October 1999, any of the plaintiffs amended their complaints to add a RICO claim against Cohen.[4] See *Simmons v. Regions Bank*, 255 Ga. App. 824, 826 (1) (567 SE2d 49) (2002).

To circumvent the preclusive effect of the doctrine of res judicata, Austin, Herrman, and Kerr contend that the RICO Act contains a special provision that has the effect of authorizing more than one lawsuit. They claim that "the intent of RICO is to catch Defendants, like Appellee Cohen, who are generally too 'slippery' to be found liable in another type of action."

A party may sue in common law tort and under RICO for the same fraud. See *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14, 16 (1) (566 SE2d 2) (2002). The doctrine of election of remedies does not foreclose seeking consistent or inconsistent remedies against the same person. Id. at 17. Before entry of a judgment, a party may continue to pursue any number of inconsistent remedies. Id. OCGA § 16-14-9 simply reinforces that principle by authorizing a party to seek more than one remedy. However, we find nothing in the language of OCGA § 16-14-9 that would create an exception to the doctrine of res judicata.

The prior judgments appear to have been the result of Cohen's blatant perjury.[5] Even assuming arguendo that the prior judgments

---

[4] A civil RICO cause of action accrues when a plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern. *Cobb County v. Jones Group*, 218 Ga. App. 149, 154 (8) (460 SE2d 516) (1995).

[5] In Cohen's brief in support of summary judgment in Kerr's suit, Cohen cited his own affidavit to claim: "Cohen's affidavit serves to successfully pierce the pleading of Plaintiff's complaint." He represented to the trial court that:

 The facts set forth in [Kerr's] amended complaint also are consistent with Cohen's affidavit which states that he does not know [Kerr] and that he has never communicated with [Kerr], either in person or by telephone (Exhibit D-3 Affidavit of Cohen). If Cohen did not communicate with [Kerr], it is obvious that he could not have made

were procured as a result of fraud perpetrated on the court and perjured testimony, the proper remedy in such circumstances is to file a motion to set aside each judgment, not to file another lawsuit.[6] See *Shepherd v. Epps*, 179 Ga. App. 685, 686 (1) (347 SE2d 289) (1986) (when judgment allegedly infected by perjury, the remedy is a direct attack upon that judgment).

In entering the guilty plea, Cohen admitted committing the felony offense of conspiracy to commit wire fraud. The evidence shows that Cohen participated in an elaborate fraudulent scheme during which Cohen held himself out as a member of the state bar and as the designated escrow attorney for a particular bank in Antigua. The conspiracy in which Cohen and his co-defendants participated bilked Austin, Herrman, and Kerr, along with 35 others, out of millions of dollars. Even so, under the applicable rules of civil practice, we are constrained to find that the trial court did not err in finding that Cohen was entitled to judgment as a matter of law. See *Grant*, supra, 244 Ga. App. at 371. While we do not condone Cohen's reprehensible conduct, this Court is limited to the correction of errors of law made by trial courts. *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). In performing that task, "we lay claim not to the wisdom of Solomon, but to the rule of law." *Edmondson*, supra, 251 Ga. App. at 780 (1).

2. In light of this holding, the remaining enumerations of error are moot.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 29, 2004 —
RECONSIDERATION DENIED JULY 22, 2004 — 

*Arthur J. Shelfer, Jr.*, for appellants.
*McCollum & Rawlins, Elliott P. McCollum, Jr., T. Mark Thedieck, J. Converse Bright*, for appellee.

---

a false representation. If there was no false representation, there can be no fraud. This statement was filed in the Superior Court of Thomas County on August 25, 2000, *after* Cohen had already testified in the federal trial in Florida and *after* Cohen had pled guilty as a result of his business transactions in the money laundering conspiracy.

[6] OCGA § 9-11-60 (d) (2) authorizes a motion to set aside for fraud or the acts of the adverse party when unmixed with the negligence or fault of the movant. As to whether the three-year limitation period for filing such motion is subject to the tolling provisions of OCGA § 16-14-8 is not an issue before us.