**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 3, 2016**

# In the Court of Appeals of Georgia

A16A0616. FRANKLIN v. EAVES.                                    PE-025

PETERSON, Judge.

Dedrain E. Frankin brought a lawsuit under the Georgia Whistleblower Act against defendant John E. Eaves in his official capacity as chairman of the Fulton County Board of Commissioners ("the County"). She appeals from the trial court's orders granting the County's motion to open default and granting the County's motion for summary judgment. We agree with the County that the trial court did not abuse its discretion in granting the motion to open default and affirm the trial court's ruling on that motion. But because there are genuine disputes of material fact preventing summary judgment for the County on the ground that Franklin did not timely file her suit, we reverse the trial court's grant of summary judgment.

1. Franklin first argues that the trial court erred in granting the County's motion to open default. We disagree.

On October 11, 2013, Franklin filed her lawsuit in the Fulton County Superior Court against the County's manager, alleging claims under the Georgia Whistleblower Act, OCGA § 45-1-4, as well as provisions of the federal and state constitutions. On November 18, 2013, she filed an amended complaint, substituting Eaves in his official capacity as the defendant and alleging claims under only OCGA § 45-1-4 and the free speech protections of the Georgia constitution. Nine days later, the County's manager filed a notice of removal in federal court, referencing only the original complaint. With the County manager's consent, the federal district court on January 3, 2014, issued an order remanding the case to state court.

There was, however, some delay in docketing that order in state court. After inquiries from Franklin's counsel, the order appeared on the Fulton County Superior Court docket as having been docketed on March 14, 2014. The County filed answers to Franklin's complaint and amended complaint on March 25, 2014. Implicitly recognizing that its answer was tardy, the County filed a motion to open default, accompanied by an affidavit by its counsel. Counsel averred that, after the federal court issued its remand order, her office checked the status of the case on the state

court docket on a daily basis. She did not learn until March 25, 2014, however, that the remand order had been docketed in state court, and even then "the status of the case remained closed" until her office contacted the state court. The County took the position that it was entitled to open default because it had filed its answer and paid costs within the 15-day grace period afforded by OCGA § 9-11-55(a), or, alternatively, the trial court should exercise its discretion to open default pursuant to § 9-11-55(b). In opposing the motion, Franklin moved for a default judgment and argued that the County's thirty days for filing an answer began to run upon service of the complaint on November 4, 2013, and that the County had only seven days left once the federal court remanded the case on January 3, 2014, making the motion to open default 62 days late, even considering the grace period.

While the motion to open default was pending, the County filed a motion for summary judgment. The trial court granted the motion to open default and denied the motion for a default judgment without elaboration, but also denied the County's motion for summary judgment. The trial court later granted summary judgment to the County after it moved for reconsideration.

A trial court's decision to open a prejudgment default under OCGA § 9-11-55(b) is reviewed for an abuse of discretion as long as certain prerequisites are met.

3

*Brazell v. J. K. Boatwright & Co., P.C.*, 324 Ga. App. 502, 502 (751 SE2d 133) (2013). After the 15-day grace period for opening default as a matter of right under OCGA § 9-11-55(a), a trial court has no discretion to open default unless the defendant's showing for opening the default meets four conditions: it must (1) be made under oath, (2) offer to plead instanter, (3) announce ready to proceed with trial, and (4) set up a meritorious defense. *See id.* at 502-04; OCGA § 9-11-55. "Compliance with the conditions of OCGA § 9-11-55(b) is mandatory, and in its absence, the trial court has no discretion to open default." *Cavender v. Taylor*, 285 Ga. 724, 725 (2) (681 SE2d 139) (2009).

Franklin challenges the trial court's ruling based only on the first condition, arguing it was not met because the County's answer and amended answer were not made or verified under oath. But Franklin did not argue this below, and "[i]ssues not raised below will not be considered on appeal." *Allen v. Peachtree Airport Park Joint Venture*, 231 Ga. App. 549, 550 (2) (499 SE2d 690) (1998) (footnote omitted). *See also Robinson v. Moonraker Assocs.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992) (appellants waived right to complain that trial court opened default despite appellee's failure to pay costs as required by OCGA § 9-11-55(b)). Accordingly, we need not consider whether the four conditions for opening default have been met here.

4

Once those four prerequisites are satisfied, a trial court may open default on any one of three grounds: (1) providential cause, (2) excusable neglect, or (3) that a proper case has been made for opening default. *Brazell*, 324 Ga. App. at 502. Although the "proper case" ground is broader than the other two grounds for default, it does not give a trial court unlimited authority to open a default. *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). In considering whether to open default under OCGA § 9-11-55(b), courts consider (1) whether and how the opposing party will be prejudiced by opening the default, (2) whether the opposing party elected not to raise the default issue until after the time under OCGA § 9-11-55(a) had expired for the defaulting party to open default as a matter of right; and (3) whether the defaulting party acted promptly to open the default upon learning that no answer either had been filed or timely filed. *Thomas v. Brown*, 308 Ga. App. 514, 516 (3) (707 SE2d 900) (2011). The law favors the opening of defaults, as cases should be decided on their merits whenever possible. *Id.* at 517 (3).

Franklin argues that the County has not made a good case for opening default because counsel "substantially miscalculated" the time for filing an answer and neglect by counsel is not a valid excuse. However, the County could not file its answer until the state court case was reopened, and the undisputed evidence shows

5

that the County acted with diligence to monitor the state court docket. The undisputed evidence also shows that the County filed its answers and moved to open default on the same day that it learned the federal court's remand order had been docketed in state court. Franklin has not shown how she will be prejudiced by opening of the default. Although the trial court did not specify the basis on which it granted the motion to open default, it did not abuse its discretion in opening default on the basis of either excusable neglect or proper case.

2. Franklin also argues that the trial court erred in granting summary judgment on the ground that she failed to timely file her lawsuit. We agree.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). Because Franklin's original complaint was verified, we may consider factual allegations made therein as though she had averred those facts in an affidavit, recognizing that a verified complaint, like an affidavit, is not sufficient to avoid summary judgment to the extent

6

that it is merely conclusory. *See Kerr v. Cohen*, 249 Ga. App. 392, 397 (1) (c) (548 SE2d 17) (2001).[1]

Viewing the evidence in the light most favorable to the plaintiff, Franklin has been an employee of the County since 2007, working in the health department. In 2011, she became a Financial Systems Coordinator, the duties of which included credentialing medical providers by submitting information to various care management organizations. In that capacity, she collected from providers information about their health status, demographics, and various numerical identifiers. She had additional responsibilities for credit card payment processing that involved handling confidential medical information from patients, including their diagnoses and demographics. In March 2012, Franklin was moved from a private office to a cubicle.

That move triggered a series of complaints by Franklin premised on the notion that working in a cubicle would expose providers' and patients' protected health information to the general public in violation of the law. In March 2012, she expressed concerns to her supervisors that moving to a cubicle could violate the

_____

[1] Although Franklin contends on appeal that her amended complaint was verified and cites to its factual statements in her appellate briefing, the record shows that the amended complaint was not verified, and we do not consider the amended complaint as equivalent to an affidavit.

confidentiality requirements of the federal Health Insurance Portability and Accountability Act. Later that month, she filed an internal written grievance to that effect. In July 2012, the County's grievance review committee sent Franklin a recommended settlement order, approved by the County manager, finding that the health department had not erred in its practices and thus denying Franklin's grievance. The grievance committee recommended that the health department provide a secured office for Franklin or any other employee processing documents containing confidential health information.

Franklin contends that she experienced retaliation as a result of her grievance. After she filed her grievance, on or around August 27, 2012, her credit card processing duties were assigned to another employee, who was moved from a cubicle to an office. Her credentialing duties were assigned to another employee on or around October 12, 2012. She claims that she was not informed of those duty reassignments until a October 24, 2012, meeting with management.

Franklin also claims that she experienced other retaliation in her day-to-day interactions with management. She contends she was denied a request to attend a certain training, learning on or around October 17, 2012, that she was not invited. Franklin notes that she asked to leave work early in December 2012 but that request

8

was denied (although she left work early, anyway, and was not disciplined). She complains that management ignored other leave requests after she filed her grievance, including in early 2013. She points to an April 2014 incident in which management required an original of her absence excuse for some volunteer work, claiming that also was retaliation. Franklin also alleges that management required her to submit documents for jury duty leave that were not required of others, required a doctor's note after she took one day of intermittent FMLA leave, and generally harassed her for an inability to complete her work in a timely manner and made it harder for her to do her job; it is not apparent from the record when those particular events occurred, however.

Franklin also claims that the County retaliated by failing to hire her for two job transfers for which she applied. She applied for a program administrator's position in July 2012 and was interviewed in August 2012, but a County official said that she didn't get the job because of her low interview scores. She also applied for a health program manager position but was informed by the County's recruiting division on January 25, 2013, that she had not been selected because she did not meet the minimum requirements for the position. Franklin filed a second grievance that same

month, claiming retaliation and seeking transfer out of her department, which was denied in June 2013.

The County moved for summary judgment partly on the basis that the October, 11, 2013, filing of Franklin's lawsuit was time barred, either in whole or in part, because the first instance of retaliation alleged by Franklin, her reassignment from an office to a cubicle, occurred in March 2012. In ultimately granting the County's motion, the trial court ruled that there were "no material facts at issue for determination at trial" and the County was "entitled to judgment as a matter of law as a result of Plaintiff's failure to timely file her lawsuit[.]" Franklin argues that the trial court erred in granting summary judgment to the County on the ground that she failed to timely file her lawsuit.[2]

---

[2] Franklin also appeals on the basis that the trial court erred in granting summary judgment to the County on the ground that Franklin could not establish a prima facie case under the Georgia Whistleblower Act. This argument, and the County's response to it, are premised on the assumption that the trial court provided two alternative bases for its grant of summary judgment. That assumption is erroneous: the trial court merely said that the case could be resolved based on Franklin's failure to timely file, an issue that, in the trial court's estimation, presented no genuine disputes of material fact for trial. We disagree with that conclusion, but nothing prevents the trial court from considering on remand the County's alternative argument for summary judgment.

The Georgia Whistleblower Act ("the Act") provides that a public employee who experiences retaliation in violation of the statute may file a lawsuit "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." OCGA § 45-1-4(e)(1). The Act's definition of "retaliation," the discovery of which triggers the running of the statute of limitations, includes "the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action[,]" OCGA § 45-1-4(a)(5), indicating that any discrete adverse employment action can create a cause of action and, upon discovery, trigger the running of the statute of limitations.

Franklin argues on appeal that her cause of action accrued on October 24, 2012, when her supervisor informed her in a meeting that her job duties of credentialing and credit card reporting had been assigned to another employee. Therefore, she argues, she timely filed her complaint within one year, on October 11, 2013. However, the County accurately points out that Franklin did not take this position in the trial court below. Franklin stated in her response to the County's motion for summary judgment that the first adverse employment action against her occurred on August 27, 2012, when her supervisor assigned Franklin's credit card processing duties to another employee. Franklin's response to the motion argued that

11

the statute of limitations was tolled through May 30, 2013, while she exhausted her administrative remedies through the grievance process.[3]

The County rightly points out that "[e]ach party has a duty to present his best case on a motion for summary judgment." *Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002). However, here the issue is an affirmative defense on which the County bore the ultimate burden of proof, and it was not Franklin's obligation to argue before the trial court that the County had not met its burden. *See Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92, 97 (1) (b) (648 SE2d 690) (2007) (no waiver based on failure to argue in response to summary judgment motion on fraudulent billing claim that certain bills fell within the statute of limitations); *see also Dental One Assocs. v. JKR Realty Assocs.*, 269 Ga. 616, 618 (1) (501 S.E.2d 497) (1998) ("It is not the obligation of the non-moving party to object to the movant's failure to meet its evidentiary burden."). Franklin did not make

---

[3] In its reply brief filed with the trial court, the County noted that there is no requirement that a plaintiff under the Georgia Whistleblower Act exhaust her administrative remedies. The U.S. Court of Appeals for the Eleventh Circuit in an unpublished decision implicitly rejected the notion that there is an exhaustion requirement that can toll the statute in Georgia Whistleblower Act cases. *See Stokes v. Savannah State Univ.*, 291 Fed. App'x 931, 932 (11th Cir. 2008). Because the question of an exhaustion requirement is not at issue here, we do not consider or decide it.

an admission that she had, in fact, been informed of the change in her duties on August 27, 2012, as suggested by the County. Rather, she took a legal position as to when the statute of limitations began to run. The County seeks to require this Court to accept that legal proposition, even if it is wrong. This it cannot do. *Cf. Tiller v. State*, 314 Ga. App. 472, 474 n.2 (3) (724 SE2d 397) (2012) (court not bound by party's concession on appeal).

Moreover, the parties appear to be unduly focused on when Franklin learned that her credit card processing and credentialing duties had been taken away. These are not the only instances of retaliation alleged by Franklin. As noted above, the Act instructs us that any discrete adverse employment action can create a cause of action and thereby trigger the running of the statute of limitations upon discovery. We therefore consider each act of retaliation alleged by Franklin separately.

This is consistent with the United States Supreme Court's approach to Title VII cases, as set forth in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (122 S. Ct. 2061, 153 LEd2d 106) (2002). There, the Court held that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, "precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105

13

(emphasis added).[4] In supplemental briefing requested by the Court, Franklin offers a thoughtful analysis as to why this approach does not apply to retaliation claims under the Act, including concerns that it is at odds with the Act's rule that the limitations period begins to run when the employee receives *notice* of the adverse employment action. Franklin is correct that the one-year limitations period found in OCGA § 45-1-4(e)(1) begins to run when the employee receives notice of the adverse employment action, whereas the relevant limitations period construed by the Supreme Court began to run when the alleged unlawful employment practice "occurred." *Compare* OCGA § 45-1-4(e)(1) *with* 42 U.S.C. § 2000e-5(e)(1). We nonetheless find the Supreme Court's approach to be a helpful framework to the extent that it counsels consideration of adverse employment actions one-by-one. *Cf. Tuohy v. City of Atlanta*, 331 Ga. App. 846, 848-49 (1) (771 SE2d 501) (2015) (approving application of Title VII's burden-shifting analysis set forth in *McDonnell Douglas Corp. v.*

---

[4] The Court also held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. As Franklin has conceded that she did not allege a hostile working environment claim under a continuing violation theory in her complaint, we need not consider whether the Act contemplates such a claim or, if it does, how the limitations rule might apply.

14

*Green*, 411 U.S. 792, 804 (93 S. Ct. 1817, 36 LE2d 668) (1973) to retaliation claims brought under the Act).

Given the lack of evidence as to the exact timing of some of the acts of retaliation complained of by Franklin, it also is important to remember which party bears the burden of proof when a statute of limitations defense is raised on summary judgment. That a lawsuit is untimely filed under a given statute of limitations generally is an affirmative defense that must be proven by a defendant raising it as a basis for summary judgment. *See Cleaveland v. Gannon*, 284 Ga. 376, 381 (2) (667 SE2d 366) (2008) (medical malpractice claim); *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 511 (644 SE2d 349) (2007) (claim under Georgia Trade Secrets Act). A defendant moving for summary judgment based on an affirmative defense may not simply rely upon an absence of evidence in the record disproving the affirmative defense but must come forward with evidence demonstrating as a matter of law that the suit was filed too late. *See Porex*, 284 Ga. App. at 511.

Applying these standards, we find that the County has not proven that Franklin's claimed instances of retaliation[5] are barred by the statute of limitations.

[5] At one point in her deposition, Franklin testified that she thought being moved to a cubicle in March 2012 was itself an act of retaliation. Of course, this is nonsensical, as it predated her grievance that allegedly caused the County to retaliate

15

Regarding her claim that her duties were taken away from her in retaliation for her grievance, Franklin has presented evidence — a combination of her deposition testimony and averments in her verified complaint — that she did not learn of those changes until an October 24, 2012, meeting. Although we find it puzzling that someone could be relieved of her core job duties and not realize it for two months, that sort of credibility question creates an issue of fact for a jury, not an appellate court. *See Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015) (when a court considers a motion for summary judgment, it must accept the credibility of the evidence upon which the nonmoving party relies).

As for Franklin's other allegations of retaliation, the County has pointed to no evidence demonstrating that they are time-barred. She points to specific instances of retaliation that came to her attention within one year of the filing of her suit on October 11, 2013: not being invited to a training, the denial of a leave request and other leave requests being ignored, and a request for an original volunteer work excuse. For other claimed acts of retaliation, the record does not contain evidence of when they might have occurred, and, again, it is the County's burden to show that

against her. Franklin conceded as much in disavowing any such claim in her response to the County's summary judgment motion, which premised its timeliness argument on the notion that the move to a cubicle was Franklin's first claimed act of retaliation.

16

they are time-barred. The County presented an affidavit to the effect that Franklin was interviewed for the program administrator's position in August 2012, but no evidence of when the decision not to hire Franklin was made, let alone when she discovered it. And an affidavit by another County witness demonstrated that Franklin was informed of her non-selection for the health program manager position in January 2013, well within the statute of limitations. Whether these alleged acts were significant enough to constitute retaliation is a separate question. In the absence of a ruling below, we decline to address it in this appeal. The trial court erred in granting summary judgment to County based on the statute of limitations governing Franklin's claims.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur.*

17