In re Lezlie Noelle **RACKLEY**, Debtor.

**Kevin Rackley on his own behalf and for Sally Cannon, Guardian ad Litem, Plaintiffs,**

**v.**

**Lezlie Noelle Rackley, Defendant.**

**Bankruptcy No. 12–64924.**
**Adversary No. 12–5405.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 18, 2013.

Shayna M. Steinfeld, Steinfeld & Steinfeld, Atlanta, GA, for Plaintiffs.

Lisa P. Lenn, Lisa Lenn, P.A., Canton, GA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

JAMES E. MASSEY, Bankruptcy Judge.

In this adversary proceeding, Plaintiffs seek a determination of the dischargeability of debts owed to each of them by Defendant pursuant to the Final Order on Attorney's Fees and Expenses of Litigation entered by the Superior Court of Cobb County, Georgia on August 5, 2011 in *Rackley v. Rackley* (Civil Action File No. 10–11719–28) (the "Final Fee Order"). Plaintiffs and Defendants filed motions for summary judgment. The Final Fee Order is attached to the complaint and is the source of facts on which Plaintiffs base their motion. Complaint, Doc. No. 1, Part 2.

## A. Facts Found by, and Holdings of, the Superior Court in the Final Fee Order.

**1. Origin of Dispute.** Plaintiff Kevin Rackley is the former spouse of Defendant Lezlie Noelle Rackley; they were divorced in 2009. Complaint, Doc. No. 1, Part 2, p 4. Following the divorce, Mrs. Rackley had custody of their only child, and Mr. Rackley had "parenting time." *Id.*

The Final Fee Order catalogued the events leading to the litigation between the Rackleys over child custody and to the appointment of a guardian ad litem for the child. After their divorce became final, "it became emotionally difficult for [Mrs. Rackley] to allow [Mr. Rackley] to have parenting time with [the child]. *Id.* at 4. When teachers in an after-school program told Mrs. Rackley that the child "was observed playing with toys in a sexual manner," Mrs. Rackley questioned her child concerning happenings in Mr. Rackley's home and permitted her "boyfriend" to question the child. *Id.* The Superior Court found that Mrs. Rackley failed to disclose her concerns to Mr. Rackley as required by a separation agreement and instead began a quest to prove that Mr. Rackley had engaged in sexual misconduct involving the child. *Id.* at pp. 4–12. The son is a special needs child with a below average IQ, who had been diagnosed with expressive and receptive language disorder. *Id.* at p. 8.

The Superior Court found that Mrs. Rackley had embarked on a "clear strategy to build litigation where evidence did not exist," despite being told by multiple professionals that Mr. Rackley "was not a threat to [the child]" and that they would not pursue the case she was trying to make. *Id.* at 12–13. Further, Mrs. Rackley sought to have the Cobb County Police investigate Mr. Rackley but was rebuffed by the investigating detective. *Id.* at pp. 6–7.

In 2010, Mrs. Rackley obtained an ex parte order from the Cobb County, Georgia Superior Court suspending Mr. Rack-

ley's parenting time and filed a petition for modification of visitation to bar him from having contact with their child. *Id.* at 9. Mr. Rackley responded with his own petition to modify custody. *Id.*

Plaintiff Sally Cannon served as guardian ad litem for the Rackleys' child in the ensuing litigation over custody. The Final Fee Order described her appointment and her testimony as follows:

> The parties agreed to the appointment of Judge Sally Cobb Cannon [of the Magistrate Court of Fulton County, Georgia] as the Guardian ad Litem, which Mother denied at the attorney's fees hearing despite the fact that her suggestion of Judge Cannon to serve as the Guardian was documented in the Court's record. The Guardian found Mother to be unreliable and dishonest and recommended a total modification of custody in favor of Father with Mother having supervised parenting time. The Court finds the Guardian's testimony to be credible, and her evaluation was thorough, complete and reliable.

*Id.* at p. 10.

**2. Sanctions.** After a trial lasting more than two days, the Superior Court found that there was no evidence to support Mrs. Rackley's allegations. In the Final Fee Order, the Court determined that Defendant and her attorney, Laura E. Austin, had prosecuted claims against Mr. Rackley that were frivolous and lacked substantial justification, *id.* at 4–13, and that Defendant and her counsel had engaged in conducts that unnecessarily expanded the proceedings and increased attorney's fees and litigation expenses, *id.* at 14–15.

The Superior Court found that Mr. Rackley had incurred legal fees and litigation expenses of (1) $69,226.32 for the period December 3, 2010 through April 21, 2011 and (2) $53,335.09 for the period April 22, 2011 through June 3, 2011 and that

those fees and expenses were reasonable and necessary. *Id.* at 16–19. Based on those findings, the Superior Court held that pursuant to O.C.G.A. § 9–15–14(b), Mr. Rackley was entitled to an assessment of those fees and expenses jointly and severally against Mrs. Rackley and Ms. Austin. *Id.*

O.C.G.A. § 9–15–14(d) provides in part: "Attorney's fees and expenses of litigation incurred in obtaining an order of court pursuant to this Code section may also be assessed by the court and included in its order." Mr. Rackley had incurred attorney's fees and litigation expenses of $8,500 for preparing and prosecuting his motion to assess fees and expenses under this section, of which the Superior Court assessed $8,000 against Mrs. Rackley. *Id.* at 20–21.

The debt for these awards totaling $130,561.14 in the aggregate was not made pursuant to statutes dealing with support, as contrasted with other awards made in the Final Fee Order. The Superior Court made no finding that the sanctions imposed were for the support of Mr. Rackley or the child.

**3. Modification of Custody.** The Superior Court granted Mr. Rackley's petition to modify custody and child support, giving Mr. Rackley "sole legal and sole physical custody" of the child. *Id.* at 11–12. It can be inferred from the Superior Court's Final Fee Order that the change in custody was necessary for the well-being of the child.

The Superior Court awarded to Plaintiff Rackley and against Defendant the sum of $2,474.15 under O.C.G.A. § 19–9–3 with respect to legal fees and litigation expenses he had incurred in seeking modification of custody and child support. *Id.* at 20. In making this award, the Superior Court weighed the financial capacities and

resources of the parties, as required by O.C.G.A. § 19–6–15, which O.C.G.A. § 19–9–3(g) makes applicable. *Id.*

4. **Guardian Ad Litem.** The Superior Court found that Ms. Cannon as guardian ad litem "worked tirelessly and diligently on behalf of" the child. *Id.* at 21. It awarded to Ms. Cannon and against Defendant the sum of $11,865.00 under O.C.G.A. § 19–9–3 as her fee for services rendered as guardian ad litem. *Id.* at 21–22. In making this award, the Superior Court weighed the financial capacities and resources of the parties, as required by O.C.G.A. § 19–6–15, which O.C.G.A. § 19–9–3(g) makes applicable. *Id.* at 21.

**B. Bankruptcy and Procedural Background in Adversary Proceeding.**

On June 12, 2012, Mrs. Rackley filed in this Court a petition under Chapter 7 of the Bankruptcy Code commencing case no. 12–64924. Three months earlier, Laura Austin had filed a Chapter 7 petition commencing case no. 12–57036.

On August 9, 2012, Mr. Rackley and Ms. Cannon filed the complaint commencing this adversary proceeding to determine the dischargeability of the respective debts owed to them by Mrs. Rackley arising from the Final Fee Order.[1] Each Plaintiff contends that the debts owed by Mrs. Rackley arising from the Final Fee Order are not dischargeable under section 523(a)(5) of the Bankruptcy Code or, alternatively, under section 523(a)(15) and un-

der section 523(a)(6) of the Bankruptcy Code.

In an order entered on October 11, 2012, the Court set a deadline of December 14, 2012 for filing motions for summary judgment. Doc. No. 12.

On December 17, 2012, Defendant filed a motion for summary judgment. But she did not file a supporting affidavit or any other document to show material facts or a statement of material facts not in dispute, as required by Bankruptcy Rule 7056 and Bankruptcy Local Rule 7056–1. Doc. No. 19.

On December 18, 2012, Plaintiffs filed their motion for judgment on the pleadings or alternatively for summary judgment, Doc. No. 21, and a Statement of Material Facts Not in Dispute, Doc. No. 22.

On January 15, 2013, Defendant's counsel docketed a series of documents using the docket event of "Exhibits."[2] Doc. Nos. 27 through 33. Docket No. 27 is a copy of a letter from a court reporter. The remaining documents, other than Doc. No. 33, are copies of transcripts or summaries of transcripts. Also on January 15, Defendant filed a two-page motion to dismiss Plaintiffs' motion for summary judgment. Doc. No. 34. Neither it nor Defendant's motion for summary judgment referred to any of the "Exhibits."

The last of the seven documents electronically filed on January 15 by Defendant's counsel, which she also identified on the docket as "Exhibits," was Defendant's Challenges to Statement of Material Facts

---

1. The caption of the complaint is odd in its description of the Plaintiffs, but both Kevin Rackley and Sally Cannon are plaintiffs, as reflected by the use of "Plaintiffs" in the caption. At the Court's request, Plaintiffs' counsel confirmed that she represents both Plaintiffs in a document entitled "Representation Clarification" filed on September 16, 2013. Doc. No. 53.

2. On the docket in this adversary proceeding, Docket Nos. 27–33 are identified only as "Exhibits" without reference to any other document on file. In the Court's Electronic Case Files system, an attorney filing a document electronically must select from a list the type of document (a "docket event") being filed.

Not in Dispute. Doc. No. 33. Defendant's response commented on certain of the facts asserted by Plaintiffs to be undisputed and also asserted that the Superior Court's findings were wrong or unsupported by the evidence before the Superior Court. But the Defendant's response nonetheless admitted all of the facts that Plaintiffs asserted were undisputed.

On January 16, 2013, Defendant filed a two-page motion to dismiss Plaintiffs' motion for summary judgment to which she attached nine exhibits consisting of a total of 1,289 pages. Doc. No. 38. That document referenced none of the attached exhibits.

In an order entered on February 4, 2013, Judge Ellis–Munro, before whom this adversary proceeding was then pending, denied Defendant's motion. Doc. No. 45. The February 4, 2013 order further provided:

> [T]he Court is not entirely able to follow Defendant's filings, and Defendant shall within five (5) business days file a modified Defendant's Challenges to the Statement of Material Facts Not in Dispute [Doc. No. 35] in form that complies with BLR 7056–1(a)(2). The Court will not extend this deadline, and amended pleadings, other than Defendant's Challenges to the Statement of Material Facts Not in Dispute, will not be considered.

Defendant's Challenges to the Statement of Material Facts Not in Dispute identified in the February 4 order as Doc. No. 35 was misfiled in this adversary proceeding. It was not Mrs. Rackley's response but that of Ms. Austin and the caption on that document shows the adversary proceeding in Ms. Austin's case. Instead of complying with this order or at least pointing out that Doc. No. 33 was Mrs. Rackley's response to Plaintiff's statement of undisputed facts, Defendant ignored the order and filed on February 9, 2013 an "amended" motion for summary judgment. Doc. No. 46.

Defendant failed to comply with BLR 7056–1 by not filing a statement of undisputed facts with her first summary judgment motion and filed her second motion for summary judgment out of time and in disregard of the February 4, 2013 order. For these reasons, this Court will not consider either one of those motions.

The Court held a hearing on the motions for summary judgment on August 28, 2013.

### C. Conclusions of Law.

Plaintiffs seek a judgment that the debt owed by Defendant to each of them is not dischargeable under section 523(a)(5) or, alternatively, under section 523(a)(15) of the Bankruptcy Code and under section 523(a)(6).

**1. Summary Judgment Standards.** Pursuant to Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056, a party moving for summary judgment is entitled to prevail if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material for the purposes of summary judgment only if it "might affect the outcome of the suit under the governing law....." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

The moving party bears the initial burden to establish that no genuine factual issue exists or alternatively, that the nonmoving party cannot prove its case at trial. *Celotex,* 477 U.S. at 323–326, 106 S.Ct. 2548; *Exigent Tech., Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1307–1309 (Fed.

Cir.2006). The movant must point to the pleadings, discovery responses or supporting affidavits that tend to show the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The court must construe this evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Rollins v. TechSouth, Inc.,* 833 F.2d 1525 (11th Cir.1987). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1164 (11th Cir. 2003)." *Allen v. Board of Public Educ. for Bibb County,* 495 F.3d 1306, 1314 (11th Cir.2007).

Defendant filed numerous exhibits in this adversary proceeding separately and as attachments to her motion to dismiss Plaintiffs' motion for summary judgment (Doc. No. 38). Defendant did not, however, direct the Court's attention to specific factual sources to show that any specific fact asserted by Plaintiff to be undisputed was in fact disputed. The Court is under no obligation to sift through the voluminous exhibits filed by Defendant in an attempt to find support for a contention that material facts are in dispute. *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir.2004) ("The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials."); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 154 fn. 7, 322 U.S.App. D.C. 35, 44 (D.C.Cir.1996) (citing decisions to the same effect issued by seven other courts of appeal, including the Eleventh Circuit.) There is no disputed material fact.

**2. Collateral Estoppel.** Plaintiffs contend that the facts found in the Final Fee Order satisfy the factual elements of their claims under section 523 of the Bankruptcy Code and entitled them to the relief demanded in the complaint. Plaintiffs' Statement of Undisputed Facts, Doc. No. 22. Defendant does not dispute that the Final Fee Order is final and non-appealable, that Defendant had a full and fair opportunity to oppose the relief granted in the state court litigation and that a certified copy of the Final Fee Order is attached to the complaint. Id. at 3, ¶ 10, Defendant's Challenges to Material Facts Not in Dispute, Doc. No. 33.

Plaintiffs contend that the doctrine of collateral estoppel bars Defendant from relitigating factual issues determined by the Superior Court in the Final Fee Order that are issues in this adversary proceeding. Defendant acknowledges that she "may be collaterally estopped" to relitigate facts found in the Final Fee Order. Defendant's Challenges, Doc. No. 33, pp. 3–4.

Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla.1993).

*In re St. Laurent, II,* 991 F.2d 672, 675–676 (11th Cir.1993).

■ The elements necessary to invoke issue preclusion under Georgia law are that: "(1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. *In re Lemmons,* 2005 WL 6487216." *In re Lowery,* 440 B.R. 914, 921–922 (Bankr.N.D.Ga.2010); *Austin v. Cohen,* 268 Ga.App. 650, 654, 602 S.E.2d 146, 150 (Ga.App.2004).

Plaintiffs have shown that all five of these elements are present here with respect to the claims under sections 523(a)(5) and 523(a)(15). The factual issues common to the state court litigation and to the claims made in this adversary proceeding are those stated above in Part A of this Order. Some facts stated in Part A of this Order could possibly be relevant to the claim under section 523(a)(6), but, as explained below in Part C(6), the findings of fact in the Final Fee Order do not include a critical factual element under section 523(a)(6).

■ Defendant contends that the amounts of the awards made in the Final Fee Order were excessive. This Court has no authority, however, to review the reasonableness of the Final Fee Order under the *Rooker–Feldman* doctrine, which bars federal courts from reviewing and rejecting final state court judgments at the behest of the losing party in the state court litigation. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 1521–1522, 161 L.Ed.2d 454 (2005).

**3. Applicable Statutes.** In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 ("BAPCPA"), which amended section 523(a)(5) and added section 101(14A) of the Bankruptcy Code. In cases filed prior to October 17, 2005, the effective date of the BAPCPA, section 523(a)(5) made nondischargeable any debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child … but not to the extent that … such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

As amended by the BAPCPA, section 523(a)(5) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—…
>
> (a)(5) for a domestic support obligation[.]

Section 101(14A) provides:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>
>> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

    (i) a separation agreement, divorce decree, or property settlement agreement;

    (ii) an order of a court of record; or

    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Section 523(a)(15) was also amended by the BAPCPA to provide that a discharge under section 727 and the other applicable sections does not discharge an individual debtor a debt:

(a)(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

Section 523(a)(6) makes nondischargeable a debt for "a willful and malicious injury by the debtor to another entity or to the property of another entity."

**4. Mr. Rackley's Claims Under § 523(a)(5) and § 523(a)(15).**

Plaintiff Rackley contends that the debts owed to him under the Final Fee Order are domestic support obligations as defined in paragraphs (A), (B), (C) and (D) of section 101(14A) and are therefore not dischargeable pursuant to section 523(a)(5).

The requirements of paragraphs (A), (C) and (D) of section 101(14A) are satisfied. Mr. Rackley is a former spouse, the Final Fee Order was entered by a court of record (in dispute over child custody) and the debt owed to him has not been assigned. The remaining issue under paragraph (B) is whether any portion of the debt owed by Mrs. Rackley to Mr. Rackley pursuant to the Final Fee Order is "in the nature of ... support ... of such ... former spouse, or child of the debtor."

    Before and after the effective date of the BAPCPA, the Eleventh Circuit has directed bankruptcy judges to look to the reality of an award-what it was intended to do-and not merely to a label put on the debt by the parties or a court.

Pursuant to § 523(a)(5), a given domestic obligation is not dischargeable if it is 'actually in the nature of' alimony, maintenance, or support." *In re Harrell,* 754 F.2d 902, 904 (11th Cir.1985). Whether a given debt is in the nature of support is an issue of federal law. *In re Strickland,* 90 F.3d 444, 446 (11th Cir. 1996). Although federal law controls, state law does "provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." *Id.* To make this determination a bankruptcy court should undertake "a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support." *In re Harrell,* 754 F.2d at 906.

*Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir.2001); see also *In re Benson,* 441 Fed.Appx. 650, 651 (11th Cir. 2011).

    The assessment of $130,561.14 in favor of Mr. Rackley and against Mrs. Rackley pursuant to O.C.G.A. § 9–15–14 was a sanction for misbehavior in prosecut-

ing a frivolous claim. There is no hint in the Final Fee Order that the award was made to sustain financially or otherwise either Mr. Rackley or the Rackleys' child. Unlike its analysis of the award related to Mr. Rackley's motion for custody and the award of fees to the guardian ad litem, the Superior Court did not evaluate the ability of either party to pay the costs of litigating that Mr. Rackley had incurred. Hence, this Court concludes that the sanctions totaling $130,561.14 were not in the nature of support and therefore are dischargeable under section 523(a)(5).

■ Nonetheless, that the sanctions totaling $130,561.14 constitute nondischargeable debts under section 523(a)(15) because they are owed to Mr. Rackley as the former spouse of Defendant, the debts were incurred by Mrs. Rackley in a domestic relations dispute involving the modification of a judgment in the prior divorce case, and the debts arose from an order of a court of record in accordance with Georgia law.

■ The Superior Court also ordered Mrs. Rackley to pay $2,474.15 to cover the costs incurred by Mr. Rackley in prosecuting his motion for custody of the child and to modify an earlier award of child support. As indicated above, the Superior Court's decision to give Mr. Rackley custody of the child was in effect a determination that a change in custody was necessary for the well-being of the child. The Superior Court found that an award in this amount was appropriate after assessing the respective financial capacities and resources of the parties in accordance with O.C.G.A. § 19-9-3(g), which O.C.G.A. § 19-6-15 made applicable. Therefore, the award of $2,474.15 was in the nature of support for the child and for Mr. Rackley and is nondischargeable.

In her response to Plaintiffs' motion for summary judgment, Defendant asserted that "[c]ourts have held that, under the plain language of Section 101(14A), attorneys are not among the parties to whom a domestic support obligation can be owed." Defendant's Response, Doc. No. 43, p. 4. Defendant's argument has no application to the awards made to Mr. Rackley. The Final Fee Order makes clear that all of the awards made to him were measured by the amount of legal fees and litigation expenses that he had incurred. Exhibit A to the Complaint, Doc. No. 1, Part 2, pp. 18–20. He, not his attorney, is the person to whom the awards are owed.

**5. Ms. Cannon's claim under § 523(a)(5).**

■ **a. Fees of a Guardian Ad Litem as Support.** The Superior Court ordered Mrs. Rackley to pay a fee of $11,865.00 to Plaintiff Cannon in her capacity as guardian ad litem for the child. Both Plaintiff and Defendant consented to the appointment of a guardian ad litem. Mrs. Rackley suggested that Ms. Cannon be appointed. There can be no doubt that both Mr. Rackley and Mrs. Rackley viewed the appointment of a guardian ad litem as necessary for insuring the safety and well-being of their son, though each had a different opinion about which of them was better suited to have custody of the child.

■ Protecting the child's interests in a custody battle is in the nature of support because of the obvious impact that the outcome will have on the emotional health and overall well-being of the child. *In re Ramirez*, 2000 WL 356314, at *7 (Bankr. N.D.Ill.2000) ("[S]upport for purposes of § 523(a)(5) is not limited to paying the bills of the child, but encompasses many aspects of the child's well-being. A proceeding to determine whether child abuse is occurring (which apparently was one issue in the child custody proceeding in

this [*Ramirez* ] case) focuses on the child's best interests and clearly falls within the broad scope of the term 'in the nature of support' in § 523(a)(5).").

In deciding who should pay the fee of the guardian ad litem, the Superior Court evaluated the respective financial capacities and resources of the parties in accordance with O.C.G.A. § 19–9–3(g), which makes O.C.G.A. § 19–6–15, entitled "Child support guidelines," applicable.

For these reasons, the award of $11,865.00 was in the nature of support for the child.

**b. Case Law Pre-and Post–BAPCPA.**
In bankruptcy cases filed prior to the effective date of the BAPCPA, section 523(a)(5) made nondischargeable any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child." Prior to the effective date of the BAPCPA, almost all, if not all, courts that considered the question held that a debt for fees of a guardian ad litem for a child of a debtor was nondischargeable. *See, e.g., In re Chang*, 163 F.3d 1138 (9th Cir.1998); *In re Miller*, 55 F.3d 1487 (10th Cir.1995); *Matter of Dvorak*, 986 F.2d 940 (5th Cir.1993); accord, *In re Carlucci*, 2007 WL 7132275, at *2 (Bankr.N.D.Ga.2007) (Bonapfel, J); see also *In re Kline*, 65 F.3d 749 (8th Cir.1995); *In re Spong*, 661 F.2d 6 (2nd Cir.1981).

Defendant contends that the words "legal guardian" in section 101(14A)(B) do not include a guardian ad litem. But the majority rule after the enactment of the BAPCPA continues to be that fees awarded in a child custody case and owed by a former spouse to a guardian ad litem of a child of the debtor constitute a domestic support obligation within the meaning of section 101(14A). *See, e.g., In re Kassicieh*, 482 B.R. 190, 191 (6th Cir. BAP 2012); *Levin v. Greco*, 415 B.R. 663

(N.D.Ill.2009); *In re Rubenstein*, 2012 WL 837339, at *2–3 (Bankr.D.Conn.2012); *In re Espinosa*, 2012 WL 1951107, at *1–2 (Bankr.N.D.Ga.2012); *O'Brine v. Gove (In re Gove)*, 2011 WL 111155 (Bankr.D.Mass. 2011); *In re Stevens*, 436 B.R. 107, 109 (Bankr.W.D.Wis.2010); *Kelly v. Burnes (In re Burnes)*, 405 B.R. 654 (Bankr. W.D.Mo.2009).

**c. Statutory Interpretation.**
"The starting point in statutory interpretation is the language of the statute itself." *Ardestani v. INS*, 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (internal quotation marks and alterations omitted). If the "language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," and "the statutory scheme is coherent and consistent," the inquiry is over. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (internal quotation marks omitted). In determining whether a statute is plain or ambiguous, we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843.

*Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir.2009).

The term "legal guardian" is not a defined term in the Bankruptcy Code, in Black's Law Dictionary (8th Ed. 2004) or in Merriam Webster's Collegiate Dictionary (10th Ed. 1995). The word "legal" means "of or relating to law ... established, required or permitted by law." Black's Law Dictionary 912 (8th Ed. 2004). The word "guardian" means "[o]ne who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity or disability." *Id.* at 725. "A guardian may be appointed for all purposes or a specific

purpose." *Id.* A guardian ad litem is "a guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." *Id.* Although the term "legal guardian" is used in other federal statutes, the term is nowhere defined in the United States Code.

■ Although guardianship is a creature of state law, there is no reference to state law in section 101(14A). Congress showed in section 522(b)(2) that it knows how to make state law applicable in bankruptcy cases. The absence of any reference to state law in section 101(14A) points to the conclusion that the meaning of terms in that statute is a question of federal law. *Cf. In re Harrell,* 754 F.2d 902, 904–05 (11th Cir.1985) (holding that the determination of whether a debt was in the nature of "support" in the pre-BAPCPA version of section 523(a)(5) was a question of federal law).

The addition of section 101(14A) to the Bankruptcy Code in 2005 expanded the reach of section 523(a)(5) with respect to child support obligations. In addition to a legal guardian of a child, it added a child's parent and responsible relative to the class of persons protected by section 523(a)(5). And it expanded the sphere of nondischargeable debt to include not only debts owed to, but also debts that could be recovered by the types of persons identified in section 101(14A).

■ The Supreme Court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 2473, 177 L.Ed.2d 23 (2010) (internal quotations omitted). The use of the words "legal guardian," undefined in federal law but susceptible to meaning any guardian of a child appointed according to law, does not demonstrate that Congress intended to abrogate the considerable body of case law holding that a guardian ad litem of a child is entitled to the protection of section 523(a)(5).

This Court has found no legislative history or pre-BAPCPA cases dealing with legal guardians under section 523(a)(5) that would shed light on the purpose of adding legal guardians to the list of persons entitled to enforce support obligations. Only two reported cases prior to the BAPCPA's enactment involved a "legal guardian" and the issue of dischargeability under section 523(a)(5). Neither case held that a legal guardian was not a person covered by section 523(a)(5). Each case involved the claim of a guardian ad litem for a child or children against the debtor, who was the legal guardian of the child or children. In *In re Sullivan,* 234 B.R. 244 (Bankr.D.Conn.1999), the court held that a debt owed to a guardian ad litem was not in the nature of support under Connecticut law and that the phrase "child of the debtor" did not include the legal guardian, who was the grandmother of the children. In *In re Uriarte,* 215 B.R. 669 (Bankr.D.N.J. 1997), the court reached the same result under New Jersey law and further held that because the husband debtor, though guardian of his wife's children, was not the parent of the children, the debt was not owed to a child of the debtor.

No reported decision has held that a legal guardian to whom a debt for support was owed is dischargeable. Similarly, the Court has not found, and Defendant has not cited, any case decided prior to the enactment of the BAPCPA in which a debt for support owed to a child's parent or responsible relative was discharged. Hence, the 2005 amendments do not appear to have been enacted to overturn prior decisions that were adverse to guardians, relatives or parents or to narrow the class of persons permitted to enforce support obligations.

██ Under the circumstances described above, the meaning of the words "legal guardian" in the Bankruptcy Code must be grounded in the purpose of the statute. The purpose of sections 101(14A) and 523(a)(5) with respect to a child of a debtor is to protect that child by making a debt for support of the child nondischargeable. In the Rackleys' case before the Cobb County Superior Court, the guardian ad litem was appointed to protect their child's interest and legal rights in the face of extremely serious allegations of sexual abuse by Mr. Rackley. The Superior Court found that the child was mentally impaired, suggesting that the child needed legal protection if the allegations were true and, as it turned out, if they were frivolous and false. At stake was the child's well-being-the ultimate purpose of support. On that issue, the guardian ad litem provided, and was the only person who could provide, support for the child as a disinterested and neutral advocate for the child's best interest on the issue of which parent was best suited to be his custodian. The Court concludes that a guardian ad litem for a child in custody litigation is a legal guardian for purposes of section 101(14A) and sections 523(a)(5).

**d. Cases Relied on by Defendant Not Persuasive.** Although Defendant's motions for summary judgment will not be considered, the Court notes Defendant's argument that a guardian ad litem is not a person to whom a domestic support obligation can be owed under section 101(14A). Defendant's Amended Motion for Summary Judgment, Doc. No. 46, pp. 5–6. In support of that argument Defendant cites *In re Densmore,* 2009 Bankr.Lexis 3416 (Bankr.N.D.Tex.2009). The *Densmore* court relied primarily on the bankruptcy court's decision in *In re Greco,* 397 B.R. 102 (Bankr.N.D.Ill.2008), *rev'd sub nom. Levin v. Greco,* 415 B.R. 663 (N.D.Ill.2009). The decision in *Densmore* was rendered

six weeks before the district court reversed the bankruptcy court in *Greco.*

Both bankruptcy courts concluded that the words "legal guardian," though undefined in the Bankruptcy Code, are defined generally in federal jurisprudence. The bankruptcy court in *Greco* opined that "the ordinary meaning of 'legal guardian of a child' is a person appointed by a court to have custody of and general responsibility for the child." *In re Greco,* 397 B.R. at 109. Based on that definition of the legal guardian of a child, those courts concluded that a guardian ad litem cannot be a "legal guardian" within the meaning of section 101(14A) because a guardian ad litem for a child does not have custody and general responsibility for the child. This Court disagrees.

The authorities cited by the bankruptcy court in *Greco* as supporting its definition of "legal guardian of a child" are inapposite for determining the meaning of "legal guardian" in section 101(14A) for the following reasons.

Four of the six sources the *Greco* court cited were based on state law. But as pointed out above in Part C(5)(c), the meaning of the words "legal guardian" is a question of federal law.

One of the sources on which the *Greco* court relied was 18 U.S.C.A. § 2251A (2001), which, similar to the state sources, referred to a "parent, legal guardian, or other person having custody or control of a minor." But section 2251A does not define "legal guardian;" rather, it targets persons, including a legal guardian, who, if they have "custody of a minor," are subject to that statute.

The only federal case that *Greco* cited was *State of California Dep't of Soc. Services v. Thompson,* 321 F.3d 835, 838 (9th Cir.2003), with the parenthetical "describing parents and legal guardians as those

adults who have legal custody of the child." That is not precisely what the Ninth Circuit said. It stated: "The 'home of removal,' in the Secretary's [of the Department of Health and Human Services] lexicon and as we use the term in this opinion, is the child's 'legal' home with his or her parents or legal guardians—that is, with the adults who have legal custody of the child." *Id.* The Ninth Circuit was not defining for purposes of federal law the meaning of "legal guardian;" rather, it was flagging its use of a term used by a federal Department Secretary to pinpoint a child's home.

The two cases on which Defendant relies ignore the substance of sections 101(14A) and section 523(a)(5) in favor of a highly technical but suspect definition of "legal guardian." This Court declines to follow those cases.

**e. Attorney's Fees As Domestic Support Obligations.** As mentioned above, Defendant has argued that "attorneys are not among the parties to whom a domestic support obligation can be owed." Defendant's Response, Doc. No. 43, p. 4. To the extent that Defendant's argument is addressed to the claim of Ms. Cannon, it is flawed. Ms. Cannon's award is authorized by section 101(14A) in that she served as a legal guardian in her capacity as guardian ad litem, as discussed below. Even if that award were viewed as one payable to her as the attorney for herself as guardian ad litem, it is nonetheless a domestic support obligation to the extent that the services were performed as support for the child pursuant to an order of the Superior Court appointing Ms. Cannon guardian ad litem to which Defendant consented.

To support her argument that awards made directly to an attorney (rather than to the spouse, former spouse, child or legal guardian) can never be a domestic support obligation, Defendant cited three cases: *In re Forgette,* 379 B.R. 623 (Bankr.W.D.Va. 2007); *In re Brooks,* 371 B.R. 761 (Bankr. N.D.Tex.2007); and *In re Watson,* 402 B.R. 294 (Bankr.N.D.Ind.2009).

In *Forgette,* the bankruptcy court held that a debt owed by both the debtor and his former wife that the divorce court ordered the debtor to pay was not a domestic support obligation because it was not directly payable to the former spouse. The decision is unpersuasive because to the extent that the state court ordered the husband to pay the joint debt as support for the former spouse, she had a contingent claim against the debtor that would have been "recoverable by" her as provided in section 101(14A) if he failed to pay it.

In *Brooks,* the bankruptcy court held that a debt for legal fees owed by the debtor to the attorney of his former spouse, which the divorce court ordered the debtor to pay as part of her support, was not a domestic support obligation because the word "attorney" does not appear in section 101(14A)(A). The bankruptcy court further held that the debt to the attorney was not "recoverable by" the former spouse because those words apply only to governmental units. That statutory construction is unpersuasive because the words "owed to or recoverable by" in paragraph (A) of section 101(14A) precede both subparagraphs (i) and (ii) and necessarily apply to both subparagraphs. The former spouse in *Brooks* had a contingent claim for support based on the injunctive relief granted by the divorce court ordering the debtor to pay her attorney's fees. 11 U.S.C. § 101(5). If the debtor did not pay her attorney, she would have to do so. Hence, the claim of the attorney was recoverable by the former spouse because she held the same claim. Hence, the attorney's claim was a domestic support obligation.

In *Watson,* the court disallowed a proof of claim filed by an attorney who had appeared for the debtor's ex-spouse in a divorce case because it contained nothing to show that the debtor was liable for the debt in question. The court then went on to assume that if the fees had been awarded to an attorney for the debtor's former spouse, a different attorney, and not the claimant, held the claim. The court further opined that if the claimant had been the attorney for the debtor's spouse, the claimant would not be in the class of persons covered under section 101(14A). This conclusion was dictum based on a hypothetical. It is as unpersuasive as it was unnecessary.

▮ Decisions based on bankruptcy law prior to the effective date of the BAPCPA uniformly held that a debt for attorney's fees assessed for the benefit of a former spouse or child of the debtor in litigation dealing with child support or child custody is nondischargeable if it is in the nature of support. *See, e.g., In re Strickland,* 90 F.3d 444, 447 (11th Cir. 1996). Nothing in the legislative history of the BAPCPA gives any hint that Congress intended to make dischargeable an award of attorney's fees even if the award is in the nature of support of a former spouse or child of the debtor.

Case law under the BAPCPA has uniformly applied pre-BAPCPA law concerning support. *See, e.g., In re Phegley,* 443 B.R. 154, 157 (8th Cir. BAP 2011) ("The BAPCPA amendments that added § 101(14A) and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support."). In *In re Marshall,* 489 B.R. 630, 634 (Bankr.S.D.Ga.2013), the court opined:

> [T]he statutory changes have not invalidated prior case law. See *In re Papi,* 427 B.R. 457, 462, n. 5 (Bankr.

N.D.Ill.2010) ("Although the Bankruptcy Abuse Prevention and Consumer Protection Act, which applies to all cases filed on or after October 17, 2005, added the term 'DSO' to the Code, that term was developed from the definition of a nondischargeable debt for alimony, maintenance, and support in former Section 523(a)(5). Accordingly, case law interpreting the former version of Section 523(a)(5) remains relevant and persuasive here.") (citations omitted); *In re Poole,* 383 B.R. 308, 313 (Bankr.D.S.C. 2007) (observing that the similarity of language in pre-BAPCPA § 523(a)(5) and post-BAPCPA § 101(14A) makes case law applicable to pre-BAPCPA § 523(a)(5) helpful in interpreting § 101(14A)). Therefore, the Court concludes that pre-BAPCPA precedent remains relevant.

### 6. Claims under § 523(a)(6).

▮ Section 523(a)(6) makes nondischargeable a debt for a willful and malicious injury by the debtor to the person or property of another entity. "Willful means intentional or deliberate and can not be established merely by applying a recklessness standard." *Lee v. Ikner (In re Ikner),* 883 F.2d 986, 989 (11th Cir.1989) (citations omitted). The Supreme Court in *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Malicious means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Sunco Sales, Inc. v. Latch (In re Latch),* 820 F.2d 1163, 1166 n. 4 (11th Cir.1987) (citations omitted).

■ The Superior Court in the Final Fee Order did not find that Mrs. Rackley intended to cause financial injury to Mr. Rackley or to Ms. Cannon. O.C.G.A. § 9–15–14 permits a court to assess attorney's fees and costs of litigation against a party or an attorney that prosecutes a frivolous lawsuit or unnecessarily expands the proceeding by improper conduct. But intent to injure the other party is not a factual element of the claim under that section. The facts found in the Final Fee Order, standing alone, do not support an inference that Mrs. Rackley's purpose was to injure either Mr. Rackley or Ms. Cannon as opposed to a purpose of pursuing, albeit recklessly, her claim of child abuse. Indeed, the Superior Court found that at one point in the litigation Mrs. Rackley and her attorney "believed" that her concerns about Mr. Rackley had "been legitimate from the outset ... as they continued to have the child investigated by numerous agencies." Complaint, Ex. A., Doc. No. 1, Part 2, p. 13.

■ The equivalent of O.C.G.A. § 9–15–14 in federal practice is Fed. R.Civ.P. 11 and Fed. R. Bankr.P. 9011. The prosecution of a frivolous claim or defense in federal court may result in sanctions being imposed on a litigant or his attorney. But such conduct without a specific showing of an intent to cause injury cannot alone satisfy the requirements of section 523(a)(6). *In re Wrenn*, 791 F.2d 1542 (11th Cir.1986) (holding that a finding that a lawsuit was frivolous was consistent with a reckless disregard of the rights of the other party and therefore insufficient to prove a willful injury under section 523(a)(6)). Consequently, Plaintiffs have not shown the absence of a dispute as to the intent of Mrs. Rackley to injure them or indeed any evidence of such intent.

* * *

There is no just reason to delay the entry of judgment on claims made under section 523(a)(5) and section 523(a)(15) because the entry of a partial judgment may result in dismissal of the claim under section 523(a)(6). Accordingly, the Court will enter the judgment pursuant to Fed. R.Civ.P. 54(b), made applicable by Fed. R. Bankr.P. 7054, and the judgment will not adjudicate Plaintiff's remaining claim under 11 U.S.C. § 523(a)(6).

For the reasons stated on the record at the hearing and stated in this order, Defendant's motions for summary judgment (Doc. Nos. 19 and 46) are DENIED. Plaintiffs' motion for summary judgment (Doc. No. 21) is GRANTED IN PART as explained below and otherwise DENIED.

(1) The debt of $2,474.15 owed by Defendant to Plaintiff Rackley resulting from an award under O.C.G.A. § 19–9–3 in the Final Fee Order for legal fees and litigation expenses incurred by Plaintiff Rackley is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

(2) The debt of $11,865.00 for guardian ad litem fees owed by Defendant to Plaintiff Cannon awarded under O.C.G.A. § 19–9–3 in the Final Fee Order is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

(3) The debts of $69,226.32 and $53,335.09 owed by Defendant to Plaintiff Rackley (resulting from awards under O.C.G.A. § 9–15–14(b) in the Final Fee Order based on attorney's fees and litigation expenses incurred by Plaintiff Rackley) and the debt of $8,000.00 owed by Defendant to Plaintiff Rackley (resulting from the award under O.C.G.A. § 9–15–14(b) in the Final Fee Order based on attorney's fees and litigation expenses incurred by Plaintiff Rackley) are nondischargeable pursuant to 11 U.S.C.

§ 523(a)(15). Plaintiff Rackley's motion for summary judgment determining that those debts for sanctions are nondischargeable under section 523(a)(5) of the Bankruptcy Code is DENIED.

(4) Plaintiffs' motion for summary judgment based on section 523(a)(6) of the Bankruptcy Code is DENIED.

The Clerk is directed to serve a copy of this Order on counsel for each party.